James SPEARMAN, Jr., a minor, by his mother and next friend, Evelyn Spearman, Plaintiffs-Appellants,

v.

UNIVERSITY CITY PUBLIC SCHOOL DISTRICT, etc., Defendant-Respondent.

James SPEARMAN, Jr., a minor, by his mother and next friend, Evelyn Spearman, Plaintiffs-Appellants,

v.

Adolph HOSKINS, et al., Defendants-Respondents.

No. 62183.

Supreme Court of Missouri, En Banc.

June 8, 1981.

Mark I. Bronson, Newman & Bronson, St. Louis, for plaintiffs-appellants.

Donald L. James, St. Louis, for University City Public School Dist.

Thomas J. Plunkert, St. Louis, for Hoskins, et al.

DONNELLY, Judge.

On August 10, 1977, plaintiff James Spearman, a minor, filed a personal injury suit against defendant University City Pub-

lic School District (hereinafter "school district"). Plaintiff alleged that on January 6, 1977, while participating in a gym class and performing on a trampoline owned by the school district, he fell and landed on the trampoline's exposed springs.

Plaintiff was granted leave to file an amended petition adding as party defendants physical education instructors Adolph Hoskins and Edward Koschner. The amended petition against the instructors consisted of basically the same allegations as in the original petition against the school district.

On November 21, 1977, the school district filed a motion to dismiss on the ground that the action against it was barred by the doctrine of sovereign immunity. This motion was sustained by the trial court on May 26, 1978.

On August 18, 1978, and August 23, 1978, respectively, defendants Koschner and Hoskins filed motions to dismiss, contending (1) that plaintiff's petition failed to state a cause of action and (2) the action against the instructors was barred by the doctrine of sovereign immunity. These motions were sustained, without indication as to which ground, by the trial court on February 7, 1979.

Plaintiff appealed the trial court's rulings to the Court of Appeals, Eastern District. Upon the plaintiff's application following an opinion by the Eastern District affirming the trial court's actions, we granted transfer of the case to this Court pursuant to Rule 83.03 and now decide it as if it were an original appeal. Mo.Const. art. V, § 10.

■ Plaintiff argues that the trial court erred in sustaining the school district's motion to dismiss, contending that the sovereign immunity doctrine should not bar his action because the school district had liability insurance. This Court, in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), abrogated the doctrine of sovereign immunity prospectively as to claims arising on or after August 15, 1978 (except for *Jones* and those certain cases decided the same date as *Jones*). In this case, plain-

tiff's alleged injury occurred January 6, 1977. We approve the holding in *Strong v. Curators of the University of Missouri*, 575 S.W.2d 812, 813 (Mo.App.1978), wherein it is stated:

"*Jones* is not so conditioned as to make its prospective application inapplicable to those blanketed by the doctrine who incidentally carry insurance. No distinction is made in *Jones* as to those agencies with or without insurance. The language in *Jones* is explicit that the doctrine of sovereign immunity is to be effective to August 15, 1978, and there is no provision for lifting its protective veil simply because the agency has insurance."

■ Nor do we agree with plaintiff's contention that *Jones'* prospective application violates the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. We agree with the view expressed by the Supreme Court of Illinois in *Molitor v. Kaneland Community Unit School District No. 302*, 18 Ill.2d 11, 163 N.E.2d 89 (1959), *cert. denied*, 362 U.S. 968, 80 S.Ct. 955, 4 L.Ed.2d 900 (1960), to-wit:

"It is within our inherent power as the highest court of this State to give a decision prospective or retrospective application without offending constitutional principles. *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360."

163 N.E.2d at 97. *See also Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599, 606 (Mo.banc 1969); *Christophel v. Parkway School District*, 600 S.W.2d 61 (Mo.App. 1980).

The trial court's ruling with respect to the school district's motion to dismiss is affirmed.

Plaintiff next argues that the trial court erred in dismissing his petition against instructors Hoskins and Koschner. As stated earlier, the grounds asserted in these defendants' motion to dismiss were that (1) plaintiff's petition did not state a cause of action against the defendants; and (2) any cause of action against the defendant instructors is barred by the doctrine of sover-

eign immunity. The trial court merely sustained the motions to dismiss without comment as to the ground on which its ruling was based.

The question whether the doctrine of sovereign immunity afforded school districts also extends to teachers has been addressed infrequently in Missouri.

*Smith v. Consolidated School District No. 2*, 408 S.W.2d 50 (Mo. banc 1966), involved an action by a student against a school district, its superintendent, and an instructor for personal injuries sustained in a wrestling class. In that case, this Court affirmed the dismissal of the action against the instructor for the reason that the averments against the instructor were mere legal conclusions. *Id.* at 56. However, the Court specifically noted that the following issues were not reached by the decision:

"(1) that [the instructor] was a 'public officer clothed with discretionary powers and at all times engaged wholly in performing a governmental function and thus not liable for acts of negligence'; (2) that [the instructor] is not liable to plaintiff for alleged negligent acts of omission constituting nonfeasance; and (3) that the relationship of loco parentis existed between [the instructor] and plaintiff and he was accordingly not liable to plaintiff for an unintentional tort."

*Id.* at 55. Because these issues were not addressed, *Smith* is of no help in resolving the similar issues involved in this case.

The next case which addressed the issue of schoolteacher immunity is *Kersey v. Harbin*, 531 S.W.2d 76 (Mo.App.1975), where, as in *Smith*, physical education instructors were sued for their negligence in the supervision of a wrestling class. The defendant instructors in *Kersey* proffered the same three "defenses", quoted *supra*, as were submitted by the defendant instructor in *Smith*. With respect to these defenses, the Southern District of the Court of Appeals stated:

"[T]hese special defenses are very abstractly stated. The first two are essentially claims of immunity based on the assertion that the particular defendant

was performing a governmental function, but because we do not know what the specific duties and responsibilities of the individual defendants were, we cannot satisfactorily resolve the question of their possible immunity from the face of the petition. * * * *We can say with reasonable confidence that we know of no general principle of law which clothes grammar school teachers with immunity from liability for their negligent acts. Downs v. Conway School Dist.*, 328 F.Supp. 338, 348–349 [5] [6] (E.D.Ark.1971); *Duncan v. Koustenis*, 260 Md. 98, 271 A.2d 547, 550–552 [1] [2] (1970); *Eastman v. Williams*, 124 Vt. 445, 207 A.2d 146, 148–149 [4–7] (1965); *Crabbe v. County School Bd. of Northumberland Co.*, 209 Va. 356, 164 S.E.2d 639, 641 [3] (1968); Annot., 32 A.L.R.2d 1163, 1186–1189 (1953); Proehl, Tort Liability of Teachers, 12 Vand.L. Rev. 723, 739–742 (1959) * * * * It is nevertheless our tentative opinion that the scope of an individual instructor's duty to avoid injury to any particular student by controlling the conduct of the others is very narrow, particularly in view of the constitutional restrictions now laid upon teachers in disciplining their students. *Baker v. Owen*, 395 F.Supp. 294, 302–303 [8–10] (M.D.N.C. 1975), aff'd, 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). However the defendants' first two collective special defenses might be properly characterized, whether as 'affirmative' defenses or special traverses, we believe the merits of those defenses can only be properly resolved upon reception of some species of proof. * * *

"Defendants' assertion that they stood in loco parentis to the decedent and are therefore immune from suit has only superficial ingenuity to commend it. The notion that a teacher stands in place of a parent is a legal fiction intended to describe and limit the teacher's privilege to discipline the child. If the loco parentis doctrine still stands in the wake of *Baker v. Owen*, supra, it has never been thought to excuse the teacher for his negligence. See *Chilton v. Cook County School Dist.*

*No. 207, Maine Tp.,* 26 Ill.App.3d 459, 325 N.E.2d 666, 669–671 (1975); *Gaincott v. Davis,* 281 Mich. 515, 275 N.W.2d 229, 231 [4, 5] (1937); *Proehl,* op.cit. at 726–729.

"We fully realize we have accomplished little by this opinion other than to dispose of the appeal, but to reiterate, the parties have tendered us abstractions, rather than concrete propositions to be decided on specific facts * * * * Consequently, we have stated only tentative conclusions as to the applicable law. We believe the motion to dismiss was properly sustained, but because we believe plaintiffs *may* be able to amend their petition within permissible limits to state a claim, we think they should be permitted to do so, if they are so advised."

*Id.* at 81–82 (emphasis added).

After remand, the *Kersey* case once again reached the Southern District. *Kersey v. Harbin,* 591 S.W.2d 745 (Mo.App.1979). Although backing off from its initial holding that an action against a teacher was a "disfavored" action, the Court of Appeals held fast to its view that no immunity extended to teachers:

"In arguing that their motions to dismiss should have been granted, the defendants contend that as officers of the school district, they are clothed with a species of immunity and cannot be held liable except for commission of an intentional tort. We reject this argument, but in view of our prior opinion, a word of explanation is called for. Our analogy to 'disfavored causes' was unfortunate, but it was based upon the implications of *Baker v. Owen,* 395 F.Supp. 294, 302–303 [9, 10] (M.D.N.C.1975), aff'd 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). *Baker* dealt directly with the constitutionality of a statute, but implied that a public school student's interest in bodily security was subject to Eighth and Fourteenth Amendment protection. The decision strongly suggested that an instructor could admonish unruly students, but could do little else without a *prior* hearing, regardless how counsel for the appellants may have read the decision. The uncertainty created by *Baker* has been dispelled, to some degree, by the majority holding in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *We will reiterate that we have found no rule of law, no line of authority, which clothes any of the defendants with immunity from liability for his negligent acts. What Smith v. Consolidated School Dist. No. 2, 408 S.W.2d 50 (Mo. banc 1966), actually held, we are now convinced, is that the scope of the supervisory duty is very narrow. Defendants' obligation was to exercise ordinary care to supervise the children * * * * They were not insurers of the students' safety."*

591 S.W.2d at 748–49 (emphasis added).

Defendants Hoskins and Koschner cite *Coleman v. McNary,* 549 S.W.2d 568 (Mo. App.1977), which held "that the sovereign immunity of a political subdivision (St. Louis County) extended to its agents when they are sued in their representative capacities." The *Coleman* case is not in point. Plaintiff's pleading alleges that Hoskins and Koschner "and each of them, were acting individually * * *."

We agree with the view expressed by the Southern District, in *Kersey, supra,* that no line of authority clothes school teachers with immunity from liability for their negligent acts. *See* 3B Personal Injury *Educational Institutions* § 1.01 (1980):

"1.01(1)(a)—As a general rule a school district is considered an agency of the state, county, or town or quasi-municipal corporation and is, therefore, immune from liability in tort. * * *

\* \* \* \* \* \*

"(g)—Generally, the Board of Education is immune from liability for torts when acting in its official capacity, or for the torts of its agents, servants, and/or employees, on the ground that the doctrine of respondeat superior does not apply to an agency discharging a governmental function. * * *

"(h)—*Teachers are generally liable for the consequences of their wrongful and tortious acts, e. g., injuring a student when administering corporal punishment,*

*but some jurisdictions have statutes authorizing the school to indemnify teachers from liability for civil misconduct when said misconduct is connected with their work. This places the cost and damages of such lawsuits on the taxpayers. Some courts impose upon teachers the duty to use the same care as persons of ordinary prudence. They are charged with the same duty of caring for students as a person of ordinary prudence would use under the same circumstances. Other jurisdictions require teachers to exercise a standard of care with their students as would a parent of ordinary prudence in comparable circumstances."* (Emphasis added).

Therefore, if the trial court sustained the defendants' motions to dismiss solely on the ground that defendant instructors were clothed with sovereign immunity, the trial court erred.

■ However, where a trial court sustains generally a motion to dismiss and there is any meritorious ground alleged in the motion to justify its sustention, the ruling must be affirmed. *Anderson v. Biscoe*, 201 S.W.2d 432, 434 (Mo.App.1947). For this reason, we must determine whether the trial court's dismissal of the action against defendants Hoskins and Koschner should have been sustained on the basis of the other ground asserted—that plaintiff's petition failed to state a cause of action.

We recognize that, in the teacher-pupil relationship, a duty to exercise *some* degree of care exists but that the complexities of the relationship make it imperative that standards be permitted to evolve as different fact situations arise. *See* Drowatzky, *On the Firing Line: Negligence in Physical Education*, 6 J. of Law & Educ. 481 (1977); Annot., Personal Liability of Public School Officers, or Teachers or Other Employees for Negligence, 32 A.L.R.2d 1163 (1953).

In this rather unique situation, we believe plaintiff should be given another opportunity to state a cause of action against Hoskins and Koschner.

The judgment is affirmed as to University City Public School District.

The judgment is reversed and remanded as to defendants Hoskins and Koschner.

RENDLEN, SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in that part of the opinion which reverses and remands the judgment of dismissal as to Defendants Hoskins and Koschner and dissent as to that portion of the opinion that affirms the dismissal as to the University City Public School District.

I agree that *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo.banc 1977), does not have retroactive application and should not be accorded the same. The question of whether the purchase of liability insurance by school districts ought to be construed as a waiver or permission to sue for those matters that allegedly constitute negligent conduct resulting in injury to a student has been considered before. However, because the issue appears in this case, I feel it is not inappropriate for me to simply reiterate my position as stated in the dissent in *Kuhn v. Ladue School District*, 589 S.W.2d 281 (Mo.banc 1979). I believe the prior expenditure of public funds for the purchase of tort liability insurance should be recognized and the public given the full benefit of the expenditure by allowing the action to proceed. This would not permit a verdict or judgment in excess of the limits stated in the policy, but would permit the insured, the students and the public to have the full benefit of the policy which was purchased with public funds.

Therefore, I concur in part and dissent in part in the principal opinion in this case.